**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Artur Sarkisov,

      Petitioner

v.

Todd Blanche,[1] et al.,

      Respondents

Case No.: 2:25-cv-02321-JAD-DJA

**Order Granting Habeas Petition and Denying as Moot Motion for Temporary Restraining Order**

[ECF Nos. 1-1, 21]

Petitioner Artur Sarkisov was originally a citizen of the U.S.S.R., from an area that is now Azerbaijan. He arrived in the United States as a refugee in 1991 and was ordered removed to Azerbaijan in 2004, though he was granted withholding of removal to that country under the United Nations Convention Against Torture. So Immigrations and Customs Enforcement (ICE) officers released him from custody because they could not effectuate his removal to Azerbaijan.[2] But on May 3, 2025, ICE arrested Sarkisov, and he has been detained at the Nevada Southern Detention Center ever since. In August, an immigration judge issued a new removal order granting deferral of removal to Azerbaijan and adding Armenia as an alternative country of removal. That new removal order became final on September 25, 2025.

In November 2025, Sarkisov filed a pro se petition for a writ of habeas corpus seeking his release from custody.[3] The court appointed counsel for Sarkisov and, on March 23, 2025,

---

[1] Todd Blanche has replaced respondent Pamela Bondi as the Acting Attorney General of the United States, so I substitute him as a respondent under Federal Rule of Civil Procedure 25(d).

[2] ICE has had different institutional names throughout the years. To simplify matters, I refer to the agency with the power and authority to remove noncitizens as ICE even if it may have been called something else when Sarkisov was ordered removed.

[3] ECF No. 1-1.

Sarkisov filed a counseled motion for a temporary restraining order.[4]  Sarkisov argues that his removal to Azerbaijan or Armenia is not significantly likely to occur in the reasonably foreseeable future, so the government does not have statutory authority to continue detaining him under the standard articulated in the Supreme Court's decision in *Zadvydas v. Davis*.[5]  He also contends that his tenuous removal status means that he may be deported to a third country without a chance to properly contest that removal under the government's new third-country removal policy.  Sarkisov's habeas petition is fully briefed, and the court held a hearing on his TRO motion on April 7, 2026.

I grant Sarkisov's habeas petition.  Sarkisov has been detained for at least six months since his most recent removal order became final, and he was detained for several months before that under his 2004 removal order.  He has shown that there is no good reason to believe his removal is forthcoming, and the government has failed to present any competent evidence suggesting otherwise.  Sarkisov has also shown that he is likely to be subject to the government's third-country-removal policy and that the policy violates due process.

So I direct Sarkisov's immediate release, subject to the same conditions that were included in the order of supervision in place before his 2025 arrest.  I also prohibit the respondents from re-detaining Sarkisov absent a demonstrable change in circumstances regarding ICE's ability to remove him to Azerbaijan or Armenia.  And I prohibit the respondents from removing Sarkisov to an alternative third country without first providing adequate notice and a meaningful opportunity to seek any available relief from that removal.  Because resolving

---

[4] ECF No. 21.

[5] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

the petition affords Sarkisov the relief he seeks, I deny as moot his motion for a temporary restraining order.

## Background

Petitioner Artur Sarkisov alleges that he came to the United States as a refugee from the U.S.S.R. in 1991.[6] He was ordered removed on December 8, 2003, and that order became final on January 7, 2004. In that order, the immigration judge (IJ) ordered removal to Azerbaijan, but he also granted withholding of removal to that country under the United Nations Convention Against Torture (CAT).[7] Presumably because ICE was prohibited from effectuating Sarkisov's removal to Azerbaijan, he was released under an order of supervision after being detained for approximately 90 days following his order of removal.

ICE agents arrested Sarkisov again on May 3, 2025, following his release from state prison on a conviction for possession with intent to distribute methamphetamine.[8] In June, ICE reopened his removal proceedings.[9] On August 21, 2025, an IJ issued an order directing Sarkisov's removal to Azerbaijan but granting deferral of removal to that country.[10] In the

---

[6] ECF No. 17 at 2.

[7] *See* ECF No. 16-1 (2003 removal order); ECF No. 24-4 (ICE letter confirming that the 2003 IJ "granted [Sarkisov's] application for Withholding of Removal" under CAT).

[8] ECF Nos. 16-1, 16-2.

[9] The parties appear to disagree about whether it was ICE or Sarkisov who reopened these proceedings. The 2025 removal order states in the title that the removal proceedings were "initiated by the Department of Homeland Security," so I credit Sarkisov's allegation that ICE was the party to reopen.

[10] ECF No. 16-3. This change from withholding to deferral of removal was a result of Sarkisov's criminal history—withholding of removal is not available to noncitizens convicted of a "particularly serious crime," and deferral of removal offers less permanent relief as that status can be terminated more easily than withholding can. *See* 8 U.S.C. § 1231(b)(3)(B); 8 C.F.R. §§ 208.16(d); 208.17.

alternative, Sarkisov was ordered removed to Armenia.[11]  That order became final on September 25, 2025.

About two months after his new removal order became final, Sarkisov filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241, contending that the length of his detention exceeds the government's authority and that ICE's third-country-removal policy violates his due-process rights.[12]  The government responded that Sarkisov's detention period restarted when his new removal order became final in September, so he had been detained for only two months when he filed his petition—a length of time that the government argued was reasonable and permitted by statute.[13]  I appointed counsel for Sarkisov, who filed a reply in support of the pro se petition.[14]

In March 2025, Sarkisov filed a counseled motion for a TRO, contending that, even under the government's argument that his detention under the new removal order did not officially start until September, it had now been six months since then and ICE is still unable to show that his removal is significantly likely in the reasonably foreseeable future.[15]  The government responded with a "Decision to Continue Detention" letter from ICE representing that "ICE is currently working with the U.S. State Department to secure a third country removal for you based on" the IJ's deferral of removal to Azerbaijan, that "[a] third country removal is

---

[11] ECF No. 16-3.

[12] ECF No. 1-1.

[13] ECF No. 16.

[14] ECF No. 17.

[15] ECF No. 21.

expected, and ICE has reason to believe there is a significant likelihood that your removal will occur in the reasonably foreseeable future."[16]

**Discussion**

**A.    This court has habeas jurisdiction over Sarkisov's claims.**

The constitution provides that a writ of habeas corpus is "available to every individual detained in the United States."[17]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[18]

The government sees it differently.  It argues that this court is without jurisdiction because 8 U.S.C. § 1252(g) bars district courts from reviewing the decision to "[c]ommence proceedings, adjudicate cases, or execute removal orders"[19] and § 1252(b)(9) channels review of final orders of removal to the federal courts of appeals.[20]  But the government's § 1252(g) argument is unavailing.  Courts have habeas jurisdiction to consider challenges to the lawfulness of immigration-related detention.[21]  And "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."[22]  Rather,

---

[16] ECF No. 24-4.

[17] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[18] *Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[19] 8 U.S.C. § 1252(g).

[20] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016).

[21] *See Zadvydas*, 533 U.S. at 687.

[22] *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

§ 1252(g) is a "narrow" "discretion-protecting provision"[23] that bars challenges only to the three discrete actions enumerated in the statute.[24]

The government's § 1252(b)(9) argument fares no better.  Section 1252(b)(9) similarly does not present a jurisdictional bar when petitioners are not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined."[25]  Sarkisov does not challenge the decision to commence his removal proceeding or to execute his removal order, but rather ICE's decision to detain him indefinitely and remove him to a third country without providing adequate notice and a hearing under the due-process clause of the U.S. Constitution.  Because this court has jurisdiction to consider those challenges, I now decide their merits.

**B.      Sarkisov has shown that he is entitled to relief on his prolonged-detention claim.**

*1.      The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a

---

[23] *Id.* at 996.

[24] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'").

[25] *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[26]  During that 90-day period, detention is mandatory.[27]  The statute gives the government the ability to detain a noncitizen beyond that removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[28] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[29]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[30]

### 2. *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) does not limit the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[31]  To avoid its constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[32]  It determined that six months of post-removal-period detention is presumptively

---

[26] 8 U.S.C. § 1231(a)(1)(B).

[27] 8 U.S.C. § 1231(a)(2)(A).

[28] *Zadvydas*, 533 U.S. at 682.

[29] 8 U.S.C. § 1231(a)(6).

[30] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[31] *Id.* at 690.

[32] *Id.* at 699.

reasonable.[33]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[34]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[35]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[36]

> ### 3.    *Sarkisov has shown good reasons to believe he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with sufficient evidence of likely removal.*

Sarkisov has been detained for approximately 11 months following his rearrest in May 2025.  But the government contends that I should not consider that entire period of time in my *Zadvydas* analysis.  Because Sarkisov became subject to a new removal order that became final in September 2025, the government theorizes that the six-month period established in *Zadvydas* reset and thus that he has been detained for our purposes for only six months plus a couple of weeks.[37]  The government fails to point to any statutory or precedential authority supporting the argument that a noncitizen's detention period under a final removal order resets whenever removal proceedings are reopened and new removal order is issued.

Nevertheless, I find that this distinction doesn't matter on this record.  Even if I were to accept the government's argument, Sarkisov has still been detained for more than six months

---

[33] *Id.* at 701.

[34] *Id.*

[35] *Id.*

[36] *Id.* (cleaned up).

[37] ECF No. 16 at 11–13.

since his most recent removal order became final.  So Sarkisov bears the initial *Zadvydas* burden of showing that there are "good reasons to believe that that there is no significant likelihood of removal in the reasonably foreseeable future."[38]  To meet that burden, Sarkisov notes that he has been subject to an order of removal for about 23 years, and ICE has been unable to remove him throughout that period.  He also notes that, though deferral of removal can be set aside,[39] there is no indication that ICE is going to do so or that it is likely that Sarkisov could be removed to Azerbaijan even if ICE took that step.  As for Armenia, Sarkisov notes that he is not a citizen of that country and has no ties to it, so he doesn't believe that Armenia would accept him.  I find that Sarkisov's allegations are sufficient to show a good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government does not meet its shifted evidentiary burden to show that Sarkisov's removal is foreseeable.  It provides one piece of evidence: a "Decision to Continue Detention" letter dated March 24, 2026, in which ICE represents that it is "working with the U.S. State Department to secure a third-country removal for you," acknowledging that it cannot remove Sarkisov to Azerbaijan given the IJ's order granting deferral of removal.[40]  The letter recites the legal conclusion that "ICE has reason to believe there is a significant likelihood that [Sarkisov's] removal will occur in the reasonably foreseeable future."[41]

As counsel for respondents noted at the TRO hearing, this letter is certainly evidence.  It offers slightly more than what has been offered in several similar cases before this court: a government attorney's promise that ICE is working to effectuate removal, with no evidence

---

[38] *Zadvydas*, 533 U.S. at 701.

[39] *See* 8 C.F.R. § 208.17 (describing process to terminate deferral-of-removal status).

[40] ECF No. 24-4.

[41] *Id.*

whatsoever to support that conclusion.  At least here, ICE has provided some indication that it is working on removal.  But in substance, the letter does not provide any more information concerning the likelihood of Sarkisov's removal than unsupported attorney argument would.  It instead simply parrots the *Zadvydas* standard that there must be a significant likelihood of removal in the reasonably foreseeable future.  The letter does not back that conclusory statement with any indication of (1) which third country it anticipates removing Sarkisov to, (2) whether it has been in communication with that country, or (3) what developments have occurred to make ICE believe that removal is foreseeable.  The letter's recitation of a legal standard is insufficient to show that ICE's efforts to remove Sarkisov are likely to result in his foreseeable deportation.

Aside from that nearly weightless letter, the government offers nothing to show that ICE has taken any steps to effectuate Sarkisov's removal.  Although the government argued in its brief that Azerbaijan is still an option because deferral of removal could be terminated, government counsel disclaimed any attempts to remove him there at the TRO hearing.  The government instead focused its argument on Sarkisov's potential removal to Armenia.  But it does not present any evidence suggesting that ICE has reached out to the Armenian consulate or taken any actions to facilitate Sarkisov's removal to that country.  At the hearing, the government clung to petitioner's counsel's representation that ICE agents met with Sarkisov approximately three weeks ago to "see if there's been any change and decide whether or not they're going to be able to move forward with the removal to the third country"[42] as evidence that ICE is continuing to explore his removal.  But the government cannot show that anything came out of that meeting.  From Sarkisov's counsel's representations, it appears that ICE agents were merely checking to see if *Sarkisov himself* had made any progress in effectuating his

---

[42] Transcript of April 7, 2026, hearing.

removal—something that would be difficult, if not impossible, to do while he remains in ICE custody. The government fails to present any evidence that this meeting facilitated a request for travel documents from Armenia or moved the needle in any way toward foreseeable removal.

In short, the government has a letter reciting the *Zadvydas* standard with no supporting evidence that removal efforts are underway and appear fruitful, and a meeting between Sarkisov and ICE agents in which the agents asked questions about Sarkisov's attempts to obtain travel documents from Armenia.[43] This is insufficient to show that there is a significant likelihood of Sarkisov's removal to Armenia (or any other country) in the reasonably foreseeable future. So I grant his habeas petition on this ground, and I prohibit the federal respondents from re-detaining Sarkisov absent proof of changed circumstances demonstrating that his removal to Armenia is likely to occur in the reasonably foreseeable future.

**C.      Sarkisov has shown that he may be subject to third-country-removal procedures that violate due process.**

*1.      The respondents' policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to. The first choice is a country "to which

---

[43] In its brief, the government argued that Sarkisov had an affirmative obligation to independently seek travel documents to some other country while he was released on an order of supervision, and his failure to do so "forecloses [his] *Zadvydas* claim." ECF No. 16 at 13. At the hearing, I asked government's counsel if it was "taking the position in this case that [] Sarkisov . . . had an obligation to obtain travel documents . . . and hasn't done so," and the government responded, "In this case, absolutely not. It's not in any of our briefs. We don't cite to it. We don't reference it in any way in argument. It is . . . not applicable in this particular case." Transcript of April 7, 2026, hearing. The government did in fact make that argument in its briefs, but I take counsel's emphatic renunciation of any reliance on this argument as withdrawal of it. So I do not consider whether Sarkisov's alleged failure to independently seek his own removal impacts the *Zadvydas* analysis.

the [noncitizen] wants to be removed."[44]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[45]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[46]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[47]  And CAT, ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after the ICE determines that removal to the country on his removal order is impracticable and instead chooses a third country to deport him to.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those

---

[44] 8 U.S.C. § 1231(b)(2)(A).

[45] 8 U.S.C. § 1231(b)(2)(E)(i–vi).

[46] 8 U.S.C. § 1231(b)(2)(E)(vii).

[47] 8 U.S.C. § 1231(b)(3)(A).

assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[48]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[49]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[50]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[51]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[52]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[53]

---

[48] ECF No. 39-1.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

> **2.**     ***ICE's third-country policy violates due process, so any attempt to remove Sarkisov to a third country other than Armenia must be preceded by notice and a meaningful opportunity to be heard.***

Sarkisov contends that ICE's third-country policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause. "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[54] The "fundamental features of due process" are notice and an opportunity to be heard.[55]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal. But it has come close. In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[56] It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[57] And in the unpublished case *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[58]

District courts have extrapolated these holdings to find that, to provide adequate due process of a third-country removal, ICE must (1) provide notice, (2) "ask the noncitizen whether

---

[54] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[55] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[56] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

[57] *Id.*

[58] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (cleaned up).

he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[59]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[60]  Courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[61]

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide due process to a noncitizen who may be removed to that country.  Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation.  And ICE's second scheme doesn't fare much better.  Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other

---

[59] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025).

[60] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country, citing *Andriasian*).

[61] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

protections if he fears removal to that third country.  Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless an ICE officer determines, through an unexplained process, that he would be likely to prove that any of those protections apply.  So this process does not comport with the fundamental requirements of due process.

I also find that Sarkisov is likely to face a due-process violation from this policy.  He currently cannot be removed to Azerbaijan, and the government provides no support for the claim that removal efforts to Armenia are underway.[62]  So if the government continues attempting to remove Sarkisov, it's likely that a third-country removal will be one of its only avenues.  I thus grant Sarkisov's petition with respect to his third-country-removal claims and prohibit the federal respondents from rearresting Sarkisov with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Artur Sarkisov's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 1-1] is GRANTED**.  Petitioner **Artur Sarkisov must be released from detention immediately** under the terms of the order of supervision that was in place before his arrest.

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

---

[62] The parties both represent that removal to Armenia is technically a third-country removal even though that country is listed in the 2025 removal order.  Accepting that assertion as true, Sarkisov has not shown that the government's notice of removal to Armenia was constitutionally deficient.  Because Armenia was listed in the removal order, Sarkisov presumably had the ability to raise fear-based concerns during his reopened removal proceedings.  And even if he didn't, Sarkisov had the opportunity to appeal the IJ's designation.  He chose not to.  So the factual distinctions here compel the conclusion that, while Armenia may be a third country, the designation of removal to that country didn't follow ICE's constitutionally suspect process and thus is not subject to the same analysis.

(1) notice of the date, time, and location of Sarkisov's release at least 24 hours before the release is set to occur.

(2) notice that Sarkisov's release was effectuated within three days of this order.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Artur Sarkisov absent proof of changed circumstances making his removal to Azerbaijan or Armenia reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Artur Sarkisov to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that Sarkisov's motion for a temporary restraining order **[ECF No. 21] is DENIED** as moot.

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
April 8, 2026